UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**OUADIA BERERHOUT and**
**JENNIFER FIORITA,**                                        Chapter 13
    Debtors                                              Case No. 09-18956-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**OUADIA BERERHOUT and**
**JENNIFER FIORITA,**
    Plaintiffs
v.                                                           Adv. P. No. 09-1314
**CITY OF MALDEN**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~


**MEMORANDUM**


**I. INTRODUCTION**

The matters before the Court are 1) the Debtors' "Verified Complaint for Contempt and Violation of the Automatic Stay;" 2) the "Expedited Motion of City of Malden to Dismiss Contempt Claims and to Set Hearing Dates on Debtors' Counsel's Fee Applications;" 3) the "Amended Application of Debtors' Counsel for Compensation" for the period between September 21, 2009 and October 8, 2009 for which Daniel Gindes, Esq.,

1

seeks compensation in the amount of $5,355 for fees and $304 in costs; 4) the "Second Application of Debtors' Counsel for Compensation" for the period between November 6, 2009 and January 10, 2011 for which he seeks compensation in the amount of $6,600 for fees and $20 for costs, for a total of award of $11,955 for fees and $324 for costs; and 5) the City's Rule 7068 Offer of Judgment in the sum of $6,000.

The Court conducted a hearing with respect to the foregoing matters as well as a trial on March 8, 2011 at which the Debtor, Jennifer Fiorita ("Ms. Fiorita"), and the Acting Treasurer of the City of Malden (the "City"), Jacqueline J. Jones ("Ms. Jones"), testified and 12 exhibits were introduced into evidence. The Court denied the City's Motion to Dismiss at the outset of the hearing.

The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**II. FACTS**

The Debtors, Ouadia Bererhout and Jennifer Fiorita (collectively, the "Debtors") filed a voluntary Chapter 13 petition on September 21, 2009. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtors listed the City as the holder of a claim in the amount of $280 for "Car Tickets" for the years 2007 and 2008 and the holder of a claim for parking violations in the amount of $60 for the same years. Although the Debtors disclosed that they owed the City $340, the City submitted evidence that the amount owed was over three times more, specifically $1,050. They also listed the City of Boston, the City of Everett and the City of Revere as the holders of claims relating to parking violations. The claims

arose out of a limousine business conducted by Ouadia Bererhout ("Mr. Bererhout"), which was, according to his spouse, always unprofitable.

The Debtors filed their Chapter 13 plan with their petition. On September 25, 2009, their counsel filed a certificate of service with the Court which established that he caused the Chapter 13 plan to be served on the City on September 22, 2009. The certificate of service reflects that an individual by the name of Jay Jump of BK Attorney Services, LLC, a provider of mailing services to attorneys, with an address of PO Box 1028, Davenport, WA 99122, deposited the Chapter 13 plan "for delivery by the United States Postal Service, via first class United States Mail, postage prepaid, first class, with sufficient postage thereon" to the City. The address used for the City was "City of Malden, 200 Pleasant Street, Office of the Parking Clerk, Malden, MA 02148." The Court caused the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, Deadlines" to be served on the City on September 27, 2009. The Court's Notice was directed to the parking clerk as well.

At the time the Debtors filed their Chapter 13 petition, they owned an automobile which was registered in Ms. Fiorita's name. The registration for the vehicle was due to expire on September 30, 2009.

On September 24, 2009, the Debtors went to the City Hall, presented the parking clerk with a copy of their bankruptcy petition and Schedule F, and, according to Ms. Fiorita, were told by the parking clerk that the City would not release the administrative hold on the registration of their vehicle due to outstanding parking fines. Ms. Fiorita testified that she did not recall the parking clerk stating that she would have to check with

3

the City's legal department about the release of the hold.

Ms. Fiorita testified that the administrative holds placed on the registration of the couple's motor vehicle by the City of Boston, the City of Everett and the City of Revere were released. She did not specify, however, whether she went to the Registry of Motor Vehicles after presenting evidence of the bankruptcy filing to the City's parking clerk on Thursday, September 24, 2009.[1] She stated the following: "As of the 24th, I believe there was also a hold on -- due to excise taxes, which were also being sorted at the time. I know that we had also provided them with documentation." When asked when that hold was lifted she indicated that "if I remember correctly, it was the following Monday, which would have been the 27th [sic]." The Court takes judicial notice that in 2009, the last Monday of the month was September 28th.

The administrative hold placed on the registration of the Debtors' vehicle by the City was released on Monday, September 28, 2009. Neither the Debtors nor the City was aware of the release at the time. Ms. Jones, however, testified that the City closes its offices at noon on Fridays. She also testified that the City has a contract with Kelley & Ryan Associates with respect to registration of motor vehicles and parking matters, and that it has "a direct link" with the Registry of Motor Vehicles. The Court infers from the testimony that when the City became aware of the Debtors' bankruptcy case, Kelley & Ryan Associates promptly caused the administrative hold to be lifted. This inference is compelled because the earliest that the City likely would have received a copy of the

---

[1] The Court takes judicial notice that September 24, 2009 was a Thursday.

Debtor's Chapter 13 plan, which was mailed from Washington state, and thus notice of their bankruptcy petition was September 24th, the same day that the Debtors presented evidence of their Chapter 13 petition to the parking clerk. If the City acted in response to the Debtors' appearance at City Hall or in response to its receipt of a copy of the Debtors' Chapter 13 plan on or around September 24th or 25th, its release of the administrative hold likely was delayed to September 28, 2009 because of the closing of City offices on Friday, September 25th at noon.

Ms. Fiorita did not testify as to the date the Debtors attempted to register their vehicle again after going to City Hall prior to October 2, 2009. The Debtors contacted their attorney instead, and because the City was unaware that its agent had caused the administrative hold on the registration of the motor vehicle to be released, a cascade of legal wrangling ensued.

On September 30, 2009, the Debtors filed an "Ex Parte Motion for Temporary Restraining Order to Enforce Automatic Stay." The certificate of service attached to the Motion indicates that the Debtors' attorney transmitted a copy of the Motion by facsimile to City's Treasurer. In their Motion, the Debtors recited the position of the parking clerk: "the City of Malden claims that it has the right to prevent registration of the vehicle because of the outstanding fines the debtor [sic] owes the City." They added that Ms. Fiorita was "8+ months pregnant" and that "[t]he continued actions by the City and Commonwealth are causing irreparable harm to the debtors by preventing them from getting to work, and threatening Ms. Fiorita's ability to get to the hospital when she needs

5

to."

This Court heard the Ex Parte Motion on October 1, 2009 and entered the following order:

> The debtor's attorney represented in open court that he gave notice of the emergency hearing to the City of Malden (the "City") Treasurer's Office by facsimile transmission on September 30, 2009. A representative of the City did not appear at the hearing. Based upon the unrebutted averments set forth in the motion, the Court finds that the automatic stay prevents the City from placing a hold on the debtors' renewal of their motor vehicle registration(s) and the actions of the Commonwealth of Massachusetts (the "Commonwealth") in witholding registration for unpaid debts are actions to collect a prepetition debt and are in violation of 11 U.S.C. Section 362(a)(1) and (6) and are not excepted from the stay under 11 U.S.C. Section 362(b). Moreover, such actions by the City and the Commonwealth are also violations of 11 U.S.C. Section 525(a). The Motion is allowed. The City and the Commonwealth shall take all necessary and appropriate action to renew the Debtors' vehicle registration(s). A further hearing on the Debtors' request for further injunctive relief shall be held on 10/08/09 at 9:30 am. Entered at 12:05 p.m. on 10/01/09.

Later in the day on October 1, 2009, the Debtors filed a Verified Complaint for Contempt and Violation of the Automatic Stay.[2] The Complaint contains the following recitations, which indicates that the City's employees failed to appreciate the consequences of the automatic stay and were unaware that the administrative hold had been lifted on September 28, 2009:

> During the week of September 27, 2009, Counsel had numerous conversations with the City of Malden Traffic clerk, and then with "Ann" of the city legal department. Counsel was strung along for days as the City got first one, then another "legal opinion" on the applicability of the automatic stay.

---

[2] The Debtors did not verify the Complaint. Their attorney purported to verify the Complaint. *See* Fed. R. Bankr. P. 9011(e) and 28 U.S.C. § 1746.

6

> On September 31, 2009 [sic], Counsel was finally told that the City would not comply with the stay and release the hold on debtors' account. This took place at about noon.
>
> Counsel told "Ann" he would immediately file an application for a TRO, and planed [sic] to appear in Court today, October 1, 2009. In conversations today, October 1, 2009, "Ann" verified that had that this discussion took place.
>
> Counsel responded to the City's refusal to abide by the stay by filing Debtors' Ex Parte Motion for Temporary Restraining Order to Enforce Automatic Stay, which is number 15 on the Court's docket (the "Motion").
>
> Counsel had never been given the name of a lawyer who represented the City Treasurer, so he served first the Motion and then the Notice of Hearing issued by the Court (docket number 17) to the City Treasurer by fax to (781) 397-1593. This took place late in the afternoon on September 31, 2009 [sic].
>
> "Ann" verified that those faxes were received by the Treasurer, and at some later point given to her.
>
> The hearing on the Motion took place today, October 1, 2009, and the Court issued an Order (docket number 18) allowing the TRO.
>
> Counsel called "Ann" at 11:40 on October 1, and told her about the Court's order, and asked her to immediately abide by it. Counsel could not serve the Order because he was in sec. 341 meetings until he returned to his office at about 2:45.
>
> At about 2:45 on October 1, counsel emailed the Order to "Ann." A few minutes later he confirmed she received the email.
>
> Within a half hour or less "Ann" called back to tell counsel that she had been told by the city solicitor that "proper notice had not been given."
>
> As far as counsel is aware, the hold on debtors [sic] account has not been lifted.

In response to the allegations in the Verified Complaint, the Debtors filed a "Motion for a Short Order of Notice" in which they requested a hearing on Friday, October 2, 2009.

Debtors' counsel served the City with a copy of the Motion by facsimile and email. This Court allowed the Motion and scheduled a hearing for October 2, 2009 at noon before the Hon. Frank J. Bailey, adding "[a] representative of the City of Malden shall appear personally at the hearing or shall file a Motion to appear telephonically. . . ."

On October 2, 2009, the Court conducted a hearing on the Complaint for Contempt. At the hearing, counsel to the Debtors represented that he did not take a copy of this Court's October 1, 2009 order to the Registry of Motor Vehicles, although he stated that he had transmitted a copy of the order to the Registry by facsimile before the hearing. Additionally, he expressed outrage at the disregard exhibited by the City both to him personally and to this Court's order of October 1, 2009.

Counsel to the City complained that the City had not been properly served, adding that the City did not receive notice of the filing of the petition, adding that the Motion for a Short Order of Notice was not transmitted to the Treasurer's Department, but to another department after the City's offices were closed. She also stated that "the paperwork we have says something was filed on the 25th of September." Additionally, counsel to the City represented that the City did nothing to impede the order of this Court, and that, because the order also was directed to the Commonwealth, the Debtors were not prevented from registering their automobile.

At the conclusion of the hearing, the Court found the City in contempt in failing to comply with this Court's October 1, 2009 order. It entered the following order:

Counsel to the City of Malden (the "City") represented at the hearing that it

8

had actual notice of the Court's Temporary Restraining Order dated 10/01/09 (Doc. No. 18) (the "Order"), entered in the Debtors' main case, which required that, inter alia, the City "shall take all necessary and appropriate action to renew the Debtors' vehicle registrations(s)." The City orally moved for reconsideration of the Order on the basis of deficient service but asserted no legal grounds for vacating the finding made by the Court in the Order that the City was in violation of the automatic stay under 11 U.S.C. Sec. 362(a) by failing to release the administrative "hold" on the renewal of the Debtors' vehicle registrations. Accordingly, the Court denied the Motion for Reconsideration without prejudice to renewal. Based upon the representations of counsel at the hearing, the Court finds that the City has not taken "necessary or appropriate action to renew the Debtors' vehicle registrations(s)" and is therefore in contempt of the Order. The City shall be fined $250 per calendar day, commencing today, for each day that it fails to comply with the Order by releasing the "hold." The Court shall conduct a status conference in this adversary proceeding on 10/08/09 at 9:30 a.m. at which time it will consider any renewed motion for reconsideration of the Order by the City, the award of attorneys' fees and costs and compensatory and/or punitive damages to the Debtors and any other appropriate request. Debtors' counsel shall file by 10/06/09 a detailed itemization of legal fees and costs incurred with respect to this matter in accordance with Fed. R. Bankr. P. 2016(a) and MLBR- 2016-1.

On October 2, 2009, the Debtors registered their automobile. As a consequence, the Debtors were without the legal use of their automobile, the registration for which expired on September 30, 2009, for one day and part of the next.

This Court conducted a status conference on October 8, 2009. At the hearing, the City represented that, as of October 5, 2009, the Debtors' parking fines had been voided by the City and that the administrative hold had been released. The Court ordered the City to pay the Debtors the sum of $750 representing $250 for each of the three days that the City did not release the administrative hold in violation of the Court's order of October 1,

2009.[3]

On January 1, 2011, the City filed "Defendant's Rule 7068 Offer of Judgment" in the amount of $6,000 including costs, expenses and attorney's fees.

At the trial conducted on March 8, 2011, Ms. Fiorita testified about her high risk pregnancy. She stated: "I was in the middle of a high-risk pregnancy. I was on bed rest for much of the pregnancy, and I was - - I could go into labor at any moment on September 21$^{st}$." Ms. Fiorita proffered no medical testimony or other evidence in support of the emotional distress occasioned by the Debtors' inability to register their automobile prior to the expiration of the existing registration period, i.e., September 30, 2009. Ms. Fiorita testified that she experienced anxiety and distress both before and after the commencement of the couple's bankruptcy case. She indicated that the poor performance of her spouse's livery business was the reason that the couple decided to commence a Chapter 13 case as her income from employment as an actuary was significantly greater than that of her spouse. She testified that she was extremely anxious about getting the vehicle registered because she was concerned about the potential need to get to the hospital in the event of an emergency. She added that "[i]t pretty much made me panic" when she learned that the filing of the bankruptcy petition did not eliminate problems with the renewal of the

---

[3] The City moved for reconsideration of the order entered by Judge Bailey finding it in contempt, citing its lack of adequate and proper notice. It did not disclose that the administrative hold had been lifted on September 28, 2009; rather it stated the hold was lifted on October 5, 2009. On June 22, 2010, this Court entered an order denying the City's Motion for Reconsideration and issued a 16-page Memorandum. *See* Bererhout v. City of Malden (In re Bererhout), 431 B.R. 42 (Bankr. D. Mass. 2010).

registration.

## III. DISCUSSION

A. Applicable Law

The automatic stay operates as an injunction against, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. *See* 11 U.S.C. § 362(a)(3) and (6). In Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir.1997), the United States Court of Appeals for the First Circuit observed that

> The automatic stay is among the most basic of debtor protections under bankruptcy law. *See* Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *see also* S.Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see also* [ICC v.] Holmes Transp. [Inc.], 931 F.2d [984] at 987 [(1st Cir. 1991)]; In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir.1982).
>
> The stay springs into being immediately upon the filing of a bankruptcy petition: "[b]ecause the automatic stay is exactly what the name implies-'automatic'-it operates without the necessity for judicial intervention." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir.1994). It remains in force until a federal court either disposes of the case, *see* 11 U.S.C. § 362(c)(2), or lifts the stay, *see* id. § 362(d)-(f). This respite enables debtors to resolve their debts in a more orderly fashion, *see* In re Siciliano, 13 F.3d 748, 750 (3d Cir.1994), and at the same time safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Sunshine Dev., 33 F.3d at 114; *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th rev. ed. 1996).

Soares, 107 F.3d at 975.  The City's purported refusal to release the administrative hold affecting the registration of the Debtors' vehicle violated the automatic stay.  *See, e.g.*, In re Bererhout, 431 B.R. at 50; Jessamey v. Town of Saugus (In re Jessamey), 330 B.R. 80 (Bankr. D. Mass. 2005).

Section 362(k) of the Bankruptcy Code permits a bankruptcy court to award damages for violations of the automatic stay.  It provides:

> (k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k).  Emotional distress damages qualify as actual damages. Fleet Mortg. Grp., Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999) (citations omitted).

"A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation."  *See* In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009) (footnote omitted, citations omitted).  In Kaneb, the United States Court of Appeals for the First Circuit stated:

> A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. *See* Goichman v. Bloom (In re

> Bloom), 875 F.2d 224, 227 (9th Cir.1989); *see also* Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir.1990); Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Business and Community Corp.), 901 F.2d 325, 329 (3d Cir.1990). In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. *See* Homer Nat'l Bank v. Namie, 96 B.R. 652, 654 (W.D.La.1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay. *See* Mitchell Const. Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr.N.D.Ga.1995).

196 F.3d at 269. Actual damages, including claims for emotional distress and attorney's fees, can only be awarded if there is concrete evidence supporting the award in a definite amount. In re Panek, 402 B.R. at 76 n.5 (citing In re Heghmann, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004)).

    B. Analysis

The Court finds that the Debtors established that the City had actual notice of their bankruptcy case and the automatic stay on September 24, 2009, when they advised the parking clerk at City Hall that they had filed a bankruptcy petition and showed her their bankruptcy petition and Schedule F. At that point, the City was responsible for taking immediate and appropriate steps to release the administrative freeze which should have occurred no later than Friday, September 25, 2009. Although the parties apparently were confused as to when the administrative hold was lifted, a violation of the automatic stay occurred when the City was advised of the petition and thus the automatic stay. The violation continued from September 25, 2009 until October 2, 2009 because the Debtors were mislead by the City's ignorance of its own procedures which resulted in the

administrative hold being lifted on Monday, September 28, 2009.

The Debtors also established that Ms. Fiorita suffered emotional distress. Ms. Fiorita's testimony established that her emotional distress preceded the filing of the bankruptcy petition and was attributable at least in part to her husband's failed business. Nevertheless, Ms. Fiorita testified that she was extremely upset and experienced panic when she learned that registration of the car could not take place before October 1, 2009. The Court finds that her testimony warrants an award of $1,000 as her emotional distress damages. Her testimony lacked concrete evidence to support a higher award. In an emergency situation, the Debtors could have called 911, or they even could have used their unregistered, but operable, vehicle. While such a decision might not be advisable, in a dire emergency, it might have been required to avoid serious harm to Ms. Fiorita or her baby. Moreover, the Debtors did not quantify any damages suffered on October 1, 2009 and on October 2, 2009 before they were able to register their vehicle, other than their attorney's fees.

The Debtors' actual damages are comprised of attorney's fees of almost $12,000. The Court finds that the legal fees are out of proportion to the damages suffered and that the time spent by Debtors' counsel was not commensurate with the complexity of the issues and problems addressed. Additionally, $4,125 in fees were incurred after the City's Rule 7068 Offer of Judgment.

Although the Debtors filed their bankruptcy petition on September 21, 2009, the City did not have actual knowledge of their case until Thursday, September 24, 2009.

14

Accordingly, the Debtors are not entitled to damages before that time. The Court's review of Debtors' counsel's Applications for Compensation and the time entries set forth in the Applications compels the conclusion that the amount of time spent on research and drafting were excessive in view of the settled law in the First Circuit. *See* Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999), and Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir.1997). Moreover, the time spent, and charges for, researching and drafting the Motion in Limine and Memorandum Regarding the Law of the Case Doctrine, a total of eight and one half hours, are excessive, as that motion essentially recited the procedural background set forth in this Court's Memorandum dated June 22, 2010, and contained a total of two case citations.

Considering the factors set forth in 11 U.S.C. § 330(a)(3), and weighing the necessity of seeking expedited relief and contempt against the City and responding to its Motion for Reconsideration against the lack of concrete proof as to emotional distress damages suffered by Ms. Fiorita, the Court finds that the Debtors are entitled to actual damages for attorney's fees and costs in the amount of $7,000 and $324, respectively in addition to the $1,000 award for emotional distress damages, resulting in a total award of $8,324.

In view of the Court's determination of damages in excess of the Offer of Judgment, the Court need not address issues under Fed. R. Civ. 68(d), made applicable to this proceeding by Fed. R. Bankr. P. 7068, which provides in pertinent part: "If the judgment that the offeree finally obtains [the Debtors] is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."

## IV. CONCLUSION

In view of the foregoing, the Court shall enter a judgment in favor of the Debtors in the amount of $8,324 and against the City's Motion to Dismiss Contempt Claims.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 24, 2011